# Third District Court of Appeal

## State of Florida

Opinion filed September 5, 2018.

————————

No. 3D16-2474
Lower Tribunal No. 15-448-BK

————————

**The State of Florida,**
Appellant,

vs.

**Kristina Sisco,**
Appellee.

————————

An Appeal from the Circuit Court for Monroe County, Mark H. Jones, Judge.

Pamela Jo Bondi, Attorney General, and Eric J. Eves, Assistant Attorney General, for appellant.

Carlos J. Martinez, Public Defender, and Harvey J. Sepler and Shannon Hemmendinger, Assistant Public Defenders, for appellee.

Before ROTHENBERG, C.J., and FERNANDEZ, and LUCK, JJ.

FERNANDEZ, J.

ON MOTION FOR REHEARING OR CLARIFICATION

This cause is before us on the State's Motion for Rehearing or Clarification. We deny the motion for rehearing and grant the motion for clarification. Accordingly, the opinion issued on May 30, 2018 is withdrawn, and the following opinion is substituted in its place.

The State appeals the trial court's downward departure sentence, which ordered the defendant, Kristina Sisco, to serve six months in prison, then fifteen months of community control, followed by five years of probation, instead of twenty-one months in prison for her conviction for burglary of a dwelling. We affirm, finding sufficient evidence in the record to support the trial court's decision not to impose a guidelines sentence, as well as the trial court's determination that there was "domination," according to section 921.0026(2)(g), Florida Statutes (2015).

Sisco was charged in the amended information with burglary of a dwelling. At trial, she admitted that she was guilty of trespassing, but that she had no part in the commission of the burglary of the dwelling. She claimed the crime was committed by her boyfriend at the time, Daniel Rodriguez, who stayed with her at the dwelling in question.

The evidence at trial revealed that thirty-six-year-old Sisco was the housekeeper/groundskeeper of a home in Key West in Monroe County, Florida, owned by Mr. John and Mrs. Nancye Buckner. The couple lived part of the year in

Kentucky and part of the year in their second home in Key West. The Buckners hired Sisco to watch over their Key West home whenever they were away and to take care of their dog when they were in town. Sisco had worked for the Buckners for over eight years without any problems and did not have a criminal record.

In April 2015, Mrs. Buckner left Key West to join her husband in Kentucky and once again hired Sisco to watch the house while she and her husband were away. Mrs. Buckner left Sisco a key to get in the house but told her she was not authorized to sleep at the house. Sisco's boyfriend at the time, co-defendant Daniel Rodriguez, was a convicted felon who was also a drug addict. Rodriguez pressured Sisco into allowing him to sleep at the house and convinced her to stay there with him while the Buckners were away.

While at the house, Rodriguez took property from the house and pawned it. He also took a check from Sisco, without her knowledge, and two checks from the Buckners and tried to pass off the forged checks. Although Rodriguez, who was already convicted of the theft, testified that Sisco played no role in taking any of the property from the house, the jury found Sisco guilty of burglary of a dwelling.

After the trial, at Sisco's sentencing hearing, the defense sought a downward departure because Sisco did not have any prior criminal record, conducted the burglary in an unsophisticated manner, and showed remorse for the crime. Sisco's mother testified at the sentencing hearing that she lives with her husband of forty-

3

two years and her elderly parents in a rented apartment. Sisco's son, a teenager at the time of the sentencing, was in the custody of her brother. Sisco's mother explained that because she is disabled, she decided it was best for Sisco's son to live with Sisco's brother. She testified that if Sisco got out of jail, Sisco would live with her and be under her authority. Sisco was not living with her mother when the events took place. Sisco's mother and her family moved to Key West from New York in 1995, and Sisco finished high school in Key West in 1997. She told the court that Sisco was never in any trouble during high school, finished high school, and went to work. Sisco's attorney argued that Sisco was a good candidate for probation and had always been employed since graduating from high school.

The trial court considered the following evidence and testimony that was submitted at trial: the pre-sentence investigation report, Sisco's post-arrest statements made to the police, Sisco's statement at the sentencing hearing, Sisco's mother's testimony at the sentencing hearing, the defense's motion for downward departure, and the arguments made by the State and the defense. The trial court rejected Sisco's contention that the crime was committed in an unsophisticated manner, that it was an isolated incident, and that she had shown remorse. Instead, the trial court found that Sisco qualified for a downward departure sentence pursuant to section 921.0026(2)(g), Florida Statutes (2015), because Sisco acted "under the domination of another person." The trial court stated:

4

I sat here. I listened to it. And I am quite convinced by the requisite degree that what does apply here -- let me find it -- is 921.0026(g), the defendant acted under extreme duress. No. Or under the domination of another person.

And, frankly, I listened to that trial and I am completely convinced that the reason this happened after eight years of it not happening was because of Daniel Rodriguez. And, frankly -- well, neither here nor there. I'm surprised it wasn't brought up. But, nevertheless, as I said, I don't have to sit here and when I sentence to be oblivious to evidence that I heard and law that I believe it applies.

Eight years, you're a loyal trusted employee. You're working with these people. You're going above and beyond the call of duty and all of a sudden it changes. Why? Because you had a boyfriend. And my guess is that -- and "guess" maybe isn't the right word. My belief is that, you know, this is how should I put this? The father of your child is no longer in your life. You weren't going with anybody else. And all of a sudden you have this man, and he is a criminal, as we all know, multiple times over. And all of a sudden you are acting in ways that you've never acted before. He was the one who stole things. He was the one who, according to him, snuck the key or saw whatever the means of entrance.

So the bottom line is I am fine that this particular ground for downward departure, that you acted under the domination of another person, is a ground for downward departure that has been established, that does apply and it is appropriate and give you a downward departure sentence.

The trial court later entered a written order explaining the reasons for the downward departure. The order states, in pertinent part:

1. A ground for downward departure has been proven in this case by virtue of the evidence presented at trial and during the sentencing hearing. Specifically, the Court finds that a downward departure is warranted pursuant to Section 921.0026(1)(g), Florida Statutes in that the Defendant acted under the domination of another person.

2. The Defendant has no prior criminal history. She worked for the victim for eight years and acted in an honest, responsible, and trustworthy manner with respect to their home and property

throughout that entire period of time. The Court finds that the burglary of the victims' home which the Defendant committed in this case was the product of the Defendant being dominated, controlled, and manipulated by her new boyfriend and codefendant, Daniel Rodriguez, a drug addict and multiple time convicted felon.

The state attorney's scoresheet calculated that Sisco should be sentenced to twenty-one months to fifteen years in jail. The trial court sentenced her to six months in county jail, with credit for time already served, followed by fifteen months of community control/house arrest, followed by five years of probation.

On appeal, the State argues that the record lacks evidence that Sisco's boyfriend "dominated" her. We disagree. The test for the imposition of a downward departure sentence is:

> A downward departure sentence must be supported by valid reasons. The trial court must first determine whether there is a valid legal basis for its departure sentence that is supported with facts proven by a preponderance of the evidence. The trial court's determination involves a mixed question of law and fact, and it will be sustained on review provided the trial court applied the correct rule of law and competent substantial evidence supports the trial court's ruling.
>
> The trial court must further determine whether a departure sentence represents the best sentencing option for the defendant. The trial court is required to weigh the totality of the circumstances, including aggravating and mitigating factors. The decision to depart falls within the sound discretion of the trial court and will be sustained on review absent an abuse of discretion.

State v. Johnson, 193 So. 3d 32, 34 (Fla. 3d DCA 2016) (citations omitted).

6

The trial court did not err in relying on the statutory mitigating circumstance that Sisco was under the substantial domination of Rodriguez during the burglary of the dwelling. "A trial court may reject a [defendant's] claim that a mitigating circumstance has been established provided that the record contains competent, substantial evidence to support the rejection." Connor v. State, 803 So. 2d 598, 611 (Fla. 2001). See also Nibert v. State, 574 So. 2d 1059, 1062 (Fla. 1990). "[W]hether a mitigating factor has been proven by the evidence is a question of fact subject to the competent substantial evidence standard." Zack v. State, 753 So. 2d 9, 19 (Fla. 2000).

Based on the record before us, we cannot say the trial court abused its discretion in sentencing Sisco. The ground the trial court relied on for the departure is authorized by statute. See § 921.0026(2)(g), Fla. Stat. (2015). Subsection (2)(g) states: "The defendant acted under extreme duress or under the domination of another person." The testimony presented to the trial court showed that Sisco was the Buckners' trusted employee for almost eight years. Sisco was their housekeeper, took care of their pets, did their yardwork, and never had any issues during the time she was employed by the Buckners. The evidence indicated that Sisco is the thirty-six-year-old, unmarried mother of a fourteen-year-old boy; she is a high school graduate; this was her first arrest and has no prior criminal record; she had always been employed after she graduated from high school; she had the

7

support of her parents and brother/sister-in-law, who would provide her and her son with a home and help after she gets out of jail so that she can take care of her son again, which is what she wanted to do. The evidence also indicated that Sisco was not involved with drugs or alcohol, and she was a good candidate for rehabilitation.

Rodriguez testified at trial that he pressured Sisco to let him stay at the house. Rodriguez had a long criminal history, was a multiple-time convicted felon, and was a drug addict who needed to pawn the items he took from the house in order to buy drugs. Rodriguez testified, "So I brought it upon myself to ask her about going to stay over there. She was very adamant saying, 'No, you know, we shouldn't stay there. It's not a good idea.' And I kept pushing it and pressing the issue, you know, 'Just one night; just one night.' So, basically, I kept pressing the issue, and she finally agreed, because we were basically getting into an argument about it." Rodriguez might not have used the word "demand," but it was clear there was no option for Sisco to say no to Rodriguez under the circumstances. The evidence and testimony in the record reflect that Rodriguez was the primary motivator of the criminal episode. He played the dominant role in the crime. The trial court thus found that Sisco acted under the domination of Rodriguez. Based on the totality of the circumstances, the trial court, in its discretion, believed the only reason the crimes happened was due to Sisco's domination at the time of the

8

incident by her then boyfriend, Rodriguez. The record contains competent substantial evidence to make this finding.

Merriam-Webster's Dictionary defines "domination" as: "1.) Supremacy or preeminence over another[;] 2.) Exercise of master or ruling power[;] 3.) Exercise of preponderant, governing, or controlling influence." Under this definition of "domination," the trial court did not abuse its discretion in finding that Sisco was under the domination of Rodriguez, thus supporting the downward departure in Sisco's sentence. [1] We thus affirm the trial court's downward departure sentence.

Affirmed.

---

[1] In addition, although the defense did not argue this mitigating factor, the trial court can still base its ruling on it, but because the issue was not raised on appeal, we are not deciding it. See Williams v. State, 967 So. 2d 735, 750 (Fla. 2007) (finding a trial court may base an evidentiary ruling on an alternative basis that was not suggested by the parties).